T.C. Memo. 1999-219

UNITED STATES TAX COURT

BETTY JUNE DYKSTRA AND PIETER DYKSTRA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19438-97.                    Filed July 2, 1999.

Betty June Dykstra and Pieter Dykstra, pro sese.

<u>Allan D. Hill</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined the following
deficiencies in, penalties on, and additions to petitioners'
Federal income taxes:

Betty June Dykstra:

| | | Penalties | | Additions to Tax | | |
|---|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6663 | Sec. 6662(a) | Sec. 6651(a)(1) | Sec. 6651(f) | Sec. 6654 |
| 1994 | * | $5,355 | $808 | $2,865 | $0 | $0 |
| 1995 | 33,110 | 0 | 0 | 0 | 24,372 | 1,704 |

* Respondent determined a deficiency of $11,684 against both Betty June and Pieter Dykstra.

Pieter Dykstra:

| | | Penalty | Additions to Tax | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6662(a) | Sec. 6651(a)(1) | Sec. 6654 |
| 1994 | * | $808 | $2,865 | $0 |
| 1995 | 25,621 | 0 | 6,311 | 1,242 |

* Respondent determined a deficiency of $11,684 against both Betty June and Pieter Dykstra.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the issues for our decision are: (1) Whether petitioners had unreported income from Conoco, Inc. (Conoco), during 1994 and 1995; (2) whether petitioners were entitled to their claimed itemized deductions of $17,872 in 1994; (3) whether petitioner Betty June Dykstra (Mrs. Dykstra) is liable for the fraud penalty pursuant to section 6663(b) for 1994 and an addition to tax for fraudulently failing to file a Federal income tax return pursuant to section 6651(f) for 1995; (4) whether petitioners are liable for the accuracy-related penalty for negligence pursuant to section 6662(a) for 1994; (5) whether petitioners are liable for an addition to tax pursuant to section

6651(a)(1) for 1994 and 1995;[1] and (6) whether petitioners are liable for an addition to tax for failing to make estimated Federal income tax payments pursuant to section 6654 for 1995.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference. At the time they filed their petition, petitioners resided in Tulare, California.

Petitioners filed their 1994 Federal income tax return (return) on September 11, 1995. Petitioners did not file a return for 1995.

Payments from Conoco

Prior to and during the years in issue, petitioner Pieter Dykstra (Mr. Dykstra) held an interest in an oil lease from Conoco. During this time, Mr. Dykstra was obligated to pay monthly working costs to Lauck and Associates (Lauck), the operator of the well. When Mr. Dykstra failed to make such payments, Lauck obtained a mechanic's lien against Mr. Dykstra's interest and notified Conoco that all future royalty payments should be made to Lauck.

---

[1] For 1995, respondent asserted an addition to tax pursuant to sec. 6651(a)(1) against Mrs. Dykstra in the alternative to an addition to tax pursuant to sec. 6651(f).

Beginning in 1988, Conoco sent Mr. Dykstra's royalty payments to Lauck in satisfaction of the mechanic's lien. Despite repeated requests from Mr. Dykstra, Lauck never accounted to Mr. Dykstra for the amounts received from Conoco.

Embezzled Funds

Mrs. Dykstra has a high school education. From March 1, 1994, to December 20, 1995, Mrs. Dykstra was employed as a bookkeeper and office manager by the Robins Group, Inc. (Robins). During 1994 and 1995, Mrs. Dykstra embezzled a total of $24,907[2] and $53,613, respectively, from Robins.

Initially, she used the money she took to help pay for trips to visit her gravely ill grandchild who lived out-of-state. During this time, Mr. Dykstra was unemployed and suffering from alcoholism and a gambling addiction. Later, she used the money to help her daughter and grandchild with their expenses and to pay her and Mr. Dykstra's living expenses.

Mrs. Dykstra initially believed that she would pay Robins back. She anticipated receiving a salary increase when promoted to office manager and a large yearend bonus. In late December 1995, Mrs. Dykstra realized that she would never be able to repay the moneys taken, and she confessed to numerous officers of Robins. On June 5, 1996, Mrs. Dykstra pleaded guilty to one

---

[2] For convenience, all numbers have been rounded to the nearest dollar.

count of grand theft under California Penal Code section 487(b)(3)(West 1999).

OPINION

The Conoco Payments Are Income

Respondent received Forms 1099 stating that petitioners earned $2,398 and $2,031 in 1994 and 1995, respectively, from Conoco. Respondent determined that these amounts were includable in petitioners' taxable income. Petitioners did not report these amounts on their 1994 return.

Petitioners argue that these amounts were never received by them but rather were paid to the well's operator, Lauck, in satisfaction of a mechanic's lien filed against petitioners' interest. Petitioners claim that Lauck kept more than it was owed from the royalty payments and failed to forward the excess to petitioners. Petitioners, therefore, contend that they should not be taxed on the royalty payments they never received.

It is well settled that income is taxed to the person who earns it and enjoys the benefit of it when paid. See Helvering v. Horst, 311 U.S. 112, 119 (1940); Corliss v. Bowers, 281 U.S. 376, 378 (1930); cf. Commissioner v. P.G. Lake, Inc., 356 U.S. 260, 267 (1958); Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729 (1929). Petitioners do not dispute that royalties were paid by Conoco to Lauck in satisfaction of a valid mechanic's

lien filed against their interest and, therefore, were paid for petitioners' benefit.

Petitioners' only argument is that Conoco paid Lauck in excess of the mechanic's lien and that Lauck never remitted the excess to petitioners. Petitioners presented no evidence at trial as to the amount of Lauck's lien. Additionally, petitioners failed to establish the exact amounts Lauck received from Conoco in satisfaction of Lauck's lien. Petitioners have failed to prove that respondent's determination is incorrect.[3] See Rule 142(a). Accordingly, we find that petitioners had unreported income from Conoco of $2,398 and $2,031 in 1994 and 1995, respectively.

Disallowed Itemized Deductions

In the notice of deficiency, respondent disallowed certain itemized deductions totaling $17,872 claimed by petitioners on their 1994 return.

_____

[3] We note that the U.S. Court of Appeals for the Ninth Circuit, to which this case is appealable, has held that in order for the presumption of correctness to attach to the notice of deficiency in unreported income cases, respondent must come forward with substantive evidence establishing "some evidentiary foundation" linking the taxpayer to the income-producing activity. Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), revg. 67 T.C. 672 (1977); see also sec. 6201(d)(as amended). Based on the evidence presented at trial, including Mr. Dykstra's testimony and documentary evidence, we conclude that respondent has adequately shown a connection between Mr. Dykstra and the oil lease. Respondent's determination, therefore, is entitled to the presumption of correctness.

At trial, petitioners presented no testimony as to the legitimacy of these claimed itemized deductions. Further, on brief, petitioners failed to address their entitlement to these itemized deductions. Accordingly, we treat this issue as conceded by petitioners. See <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 683 (1989).

<u>Fraud</u>

Respondent determined that Mrs. Dykstra was liable for the fraud penalty pursuant to section 6663(a) for 1994 and an addition to tax for her fraudulent failure to file a return pursuant to section 6651(f) for 1995. Mrs. Dykstra admits that she embezzled funds from Robins and failed to report the funds on her 1994 return. She also admits that she never filed a return for 1995. Mrs. Dykstra, however, claims that she did not know that embezzled funds were taxable; therefore, she did not possess the requisite fraudulent intent in 1994 or 1995.

In order to prove fraud and fraudulent failure to file, respondent must demonstrate by clear and convincing evidence that Mrs. Dykstra intended to evade taxes believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. See <u>Parks v. Commissioner</u>, 94 T.C. 654, 660-661 (1990). Where a taxpayer claims ignorance of the law, respondent must negate that claim by clear and convincing

evidence. See <u>Cheek v. United States</u>, 498 U.S. 192, 202 (1991); see also <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 217 (1992).

Respondent has failed to carry the burden of proof. Mrs. Dykstra is not a savvy taxpayer or a sophisticated businesswoman. She admittedly stole money and initially concealed her theft from her employer. Mrs. Dykstra's defrauding of her employer, however, does not automatically lead to the conclusion that she intended to defraud the Federal Government.

There is no evidence that Mrs. Dykstra withheld information from or attempted to mislead respondent during his investigation. In fact, it appears that once Mrs. Dykstra was informed that embezzled funds were taxable, she fully admitted to owing the tax. She did not maintain two sets of books or attempt to conceal assets. At trial, she answered questions freely, honestly, and without evasion. Mrs. Dykstra testified that she did not know that embezzled income was taxable, and we found her testimony credible.

While it may be reasonable to conclude that an embezzler is a type of individual who would understate her income on her return to avoid paying taxes, we are unable to find on the record before us any clear and convincing evidence that Mrs. Dykstra refrained from reporting income which she knew to be taxable. We, therefore, conclude that Mrs. Dykstra is not liable for the

fraud penalty pursuant to section 6663(a) or an addition to tax for fraudulent failure to file pursuant to section 6651(f).

Accuracy-Related Penalty

In the alternative, respondent determined that petitioners were liable for the accuracy-related penalty for negligence pursuant to section 6662(a) for their failure to report the 1994 embezzled income. Respondent also determined that petitioners were liable for the accuracy-related penalty for negligence pursuant to section 6662(a) for their claim of certain itemized deductions on their 1994 return.

Section 6662(a) provides for a penalty equal to 20 percent of the portion of the underpayment which is attributable to negligence. See sec. 6662(b)(1). Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. See Neely v. Commissioner, 85 T.C. 934, 947 (1985).

Generally, taxpayers are charged with knowledge of the law. See Niedringhaus v. Commissioner, supra at 222. While ignorance of the law is a defense to fraud, it does not always negate negligence. See id. To avoid a negligence penalty, taxpayers must take reasonable steps to determine the law and apply it. See id.

Petitioners bear the burden of proving that respondent's determination as to the negligence penalty is erroneous. See

Rule 142(a). Petitioners failed to present evidence demonstrating that they exercised reasonable care in determining their tax liability for 1994. We find that petitioners are liable for the accuracy-related penalty under section 6662(a) for 1994 for the portion of the underpayment related to their embezzled income and disallowed itemized deductions.

Failure To File

Section 6651(a)(1) imposes an addition to tax for failure to file a return within the date prescribed therefor, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. The amount added to the tax under this section is 5 percent for each month or fraction thereof during which the return is late up to a maximum of 25 percent. See sec. 6651(a)(1).

Petitioners' 1994 return was received by respondent on September 11, 1995, and thus was filed on that date (over 4 months late). See sec. 6072(a); Sanderling, Inc. v. Commissioner, 67 T.C. 176, 178-179 (1976), affd. in part 571 F.2d 174 (3d Cir. 1978); Pryor v. Commissioner, T.C. Memo. 1994-287; Grossman v. Commissioner, T.C. Memo. 1986-439. Petitioners admit that they never filed a return for 1995.

In regard to 1994, petitioners assert that their return was "accepted" by respondent; therefore, they should not be liable for the addition to tax for failure to file. Petitioners'

argument is without merit.  For 1995, petitioners argue that they were unable to file a return because they were notified that they were under audit and were in the midst of the appeal process.  We do not believe that these circumstances demonstrate reasonable cause for failure to file a return.  We conclude that petitioners are liable for the additions to tax pursuant to section 6651(a)(1) for 1994 and 1995.

Failure To Pay Estimated Income Tax

Respondent determined that petitioners were liable for an addition to tax for their failure to pay estimated Federal income tax under section 6654(a) in 1995.  This addition to tax is mandatory in the absence of a showing by petitioners that a statutory exception applies.  See Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980).  Petitioners failed to present any evidence demonstrating that a statutory exception applies in this case.  Accordingly, we sustain respondent's determination.

To reflect the foregoing,

Decision will be entered under Rule 155.